**Claude O. JONES, Jr., Appellant,**

v.

**W. K. CUNNINGHAM, Jr., Superintendent of the Virginia State Penitentiary, Appellee.**

**No. 8716.**

United States Court of Appeals Fourth Circuit.

Argued Sept. 27, 1962.

Decided Jan. 16, 1963.

---

John W. Edmonds, III, Richmond, Va. (Court-assigned counsel), for appellant.

Reno S. Harp, III, Asst. Atty. Gen. of Virginia (Robert Y. Button, Atty. Gen. of Virginia, on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and J. SPENCER BELL, Circuit Judges.

SOBELOFF, Chief Judge.

Presently confined in the Virginia Penitentiary on sentences aggregating 39 years imposed in 1951, Claude O. Jones, Jr., seeks relief by way of habeas corpus on the ground that the performance of his court-appointed lawyer was so inadequate as to amount to a denial of the effective assistance of counsel.

Pursuant to our holding in an earlier appeal, Jones v. Cunningham, 297 F.2d 851 (4th Cir., 1962), that this prisoner's petition raised a substantial constitutional question, a hearing was conducted by the District Court, but the District Judge again dismissed the petition. However, the court granted a certificate of probable cause for the present appeal, "being of the opinion that a substantial question with regard to the duty which court-appointed counsel owes to his client" was raised. Our consideration is limited to this single issue.

There is no denial, and indeed there can be none, that Jones was entitled to legal representation at his trial. As we indicated in the first appeal, 297 F.2d at 854, the charges against him involved complicated legal issues with which no unskilled layman could be expected to cope, and in combination carried a maximum penalty of seventy years' imprisonment.[1]

As the District Court's findings reveal, the need for counsel was given formal recognition on the afternoon of August 17, 1951, when the Circuit Court for Lunenburg County, Virginia, designated an experienced and highly regarded member of the local bar to represent Jones and his co-defendant William Ray Moore. But this appointment was made on the eve of the trial. Jones had been in custody since his arrest on August 8. A full confession was in the hands of the police, who had interrogated him at various intervals during a three-day period. Unassisted and unadvised by counsel, Jones had waived preliminary hearing and indicated to the Commonwealth attorney, the only attorney with whom he had talked, his willingness to relinquish his right to indictment and to plead guilty to all six in-

1. Since our earlier decision in this case we have twice decided in line with Chewning v. Cunningham, 368 U.S. 443, 82 S.Ct. 498, 7 L.Ed.2d 442 (1962), and other authorities there cited, that trials on serious and legally complex charges were fundamentally unfair because the state failed to assure the accused the effective assistance of counsel. Hobbs v. Pepersack, 301 F.2d 875, 877–879 (4th Cir., 1962); Turner v. State of Maryland, 303 F.2d 507, 511 (4th Cir., 1962). See also Holly v. Smyth, 280 F.2d 536, 539–541 (4th Cir., 1960).

formations filed against him. Cf. Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961).

Admittedly counsel did not contact the prisoners until the morning of August 18, just before their arraignment and trial. For Jones, who had not been in touch with friend or family while in the county jail, this meeting was his first and only opportunity to obtain professional advice. The court-appointed lawyer allegedly began the interview with the remark, "Well, you have made a confession; there is nothing I can do for you." The attorney now avers his inability to admit or deny making this or other remarks attributed to him,[2] but Jones was emphatic on the point at the hearing: "Mr. ▮ stopped us just as the jailor was taking us to court and he [the lawyer] said that the court had notified him to be in court that morning, that he was going to be appointed to represent us in court, and also said 'I don't know why they want to appoint me for. Nothing I can do. You already confessed and pled guilty.' He looked

like he was mad."[3] This, according to Jones' uncontradicted testimony, was the extent of the pre-trial conversation with the lawyer.

▮ The District Court in its findings makes no reference to the above incident, and there is no finding, and no shred of testimony on which it could have based a finding, that the lawyer made additional inquiry or did anything more for his client then pleading him guilty that same morning. Asked whether he discussed with Jones the question of waiver of indictment and trial by jury, the lawyer replied that he had "no recollection of whether or not any such discussion took place." Nor did the record warrant the conclusion that Jones was advised of his right to seek a continuance.[4] Certainly no application for a continuance was made. What does appear is that Jones admitted his guilt to his lawyer and no more was said about the case. For example, the attorney himself acknowledged in the stipulation that he "did not discuss with the prisoner the circumstances under which the confes-

---

2. The lawyer was seriously ill when the case came on for hearing, and his testimony was stipulated.

3. Jones adhered to this position both on cross-examination and in response to close questioning by the District Judge, as follows:

"THE COURT: Do you remember Mr. ▮ coming in to see you?

"THE WITNESS (Jones): Yes I do.

"THE COURT: Did he come to see you at the jail or the courthouse or where did he see you the first time?

"THE WITNESS: The first time when he came to see us was just before we went to court that morning. The jailers came to get ready to carry us up to court.

"THE COURT: At the jail?

"THE WITNESS: Yes sir, at the jail.

"THE COURT: How long did he talk to you at the jail?

"THE COURT: Just passed a few words, a few words.

"THE COURT: What did he say, the best of your recollection? * * *

"THE WITNESS: Told me the court had notified him to be in court that morning, that he was going to represent us and he said: 'But you already confessed.

There ain't a thing I can do for you. I don't know why they wanted to appoint me for.' "

4. The District Court's finding that the lawyer gave such advice is based solely upon an *ex parte* affidavit filed more than two years earlier, with the return of the Commonwealth. Except for Jones' express denial that any mention was made of a continuance, there is nothing in the record, including the lawyer's stipulated testimony, to support this finding. Such evidence was inadmissible under the established rule that issues of fact presented in habeas corpus proceedings may not be established by *ex parte* affidavits. Walker v. Johnston, 312 U.S. 275, 285, 61 S.Ct. 574, 85 L.Ed. 830 (1941); Moses v. Hudspeth, 129 F.2d 279, 280 (10th Cir., 1942); United States ex rel. Rooney v. Ragen, 158 F.2d 346, 351 (7th Cir., 1946); United States ex rel. McLeod v. Garfinkel, 202 F.2d 392, 394 (3d Cir., 1953); United States ex rel. House v. Swope, 232 F.2d 853, 854 (5th Cir., 1956); United States v. Salerno, 290 F. 2d 105, 106 (2d Cir., 1961). Doubtless, reliance on the affidavit as evidence was inadvertent.

sion had been made," and he asserted that Jones made no complaint as to the circumstances surrounding his confession. The District Court so found.

The record also discloses that the trial proceeded without a word being uttered by defense counsel, apart from his insistence that Jones sign the waivers of indictment and trial by jury, as well as formal entry of pleas of guilty to all six informations.

For his part in three storebreakings, Jones was charged and convicted of (a) larceny from, and (b) breaking and entering an automobile dealer's office; (c) larceny from, and (d) breaking and entering a supermarket; and (e) possession of burglar's tools and (f) breaking and entering a movie theater office. The applicable code provision states that "[i]f the same act be a violation of two or more statutes * * * conviction under one of such statutes * * * shall be a bar to a prosecution or proceeding under the other or others." [5] As construed by the Supreme Court of Appeals of Virginia, the statute permits the prosecution to charge both breaking and entering with intent to commit larceny and the larceny itself as one continuous act.[6] But while the Commonwealth may file dual accusations, it may not obtain more than one conviction.[7] Here there were not only dual convictions, but cumulative penalties.

In this instance, the informations were not prepared or filed until the morning of the trial. Had counsel been accorded an opportunity to study them in advance, serious doubt might have entered his mind whether Jones, even if chargeable with all six offenses, could lawfully be convicted of more than one crime for each of the three separate transactions. But this was a matter of defense to be raised in a formal plea in writing, setting forth all the facts and circumstances,[8] and a failure to take such action before trial constituted waiver.[9]

It is true that the lawyer says he did argue the point after trial at a presentence hearing in an unsuccessful attempt to obtain leniency.[10] But this argument came two weeks after Jones had been saddled with dual convictions for each continuous act and went only to the

5. Code of Virginia, § 19.1–259, 1950, as amended (1960).

6. Clark v. Commonwealth, 135 Va. 490, 115 S.E. 704 (1923).

7. Clark v. Commonwealth, supra, 115 S.E. at 706, explicitly states that "[w]here the breaking and entering with intent to commit larceny and the commission of the larceny are one continuous act, the accused *can only be convicted of the offense of breaking and entering with intent to commit larceny* * * *." (Italics added). Cf. Smyth v. Morrison, 200 Va. 728, 107 S.E.2d 430, 434–435 (1959). The Commonwealth relies upon Benton v. Commonwealth, 91 Va. 728, 21 S.E. 495 (1895), for the proposition that an accused may be punished for both larceny and storebreaking if separate counts are inserted in the indictment or information. However, that case was decided prior to enactment of the statute quoted in the text, the manifest purpose of which was to eliminate the hardship inherent in prosecutions under two statutes based upon a single criminal transaction. See Owens v. Commonwealth, 129 Va. 757, 105 S.E. 531 (1921).

8. A mere motion to dismiss the informations would not suffice. Sigmon v. Commonwealth, 200 Va. 258, 105 S.E.2d 171, 176 (1958).

9. Owens v. Commonwealth, 147 Va. 624, 136 S.E. 765, 767–768 (1927).

10. He also cross-examined the probation officer at the sentencing hearing and, prior thereto, tried to persuade the Commonwealth attorney to recommend light punishment. But despite Jones' "prior good record," he was given the same sentence as his recidivist co-defendant, an escaped felon. Each received sentences ranging from six to nine years on each separate count, to run consecutively—a total of 39 years. The severity of punishment is of itself significant, since "it gives color to the charge that he has not had the fair trial which the Constitution contemplates." Mitchell v. Youell, 130 F. 2d 880, 882 (4th Cir., 1942).

severity of punishment, not the legality of the convictions. Counsel's belated attempt to salvage something from the derelict case forcefully suggests that his initial contact with his client was so fleeting that he could not appreciate until after the trial the serious legal problems lurking in the case.

Likewise, no objection was raised at the trial to the introduction of the extrajudicial confession, which Jones claims was extracted after he had been "interrogated constantly by the authorities in a coercive manner and denied medical attention." Voluntariness *vel non* of the confession is not here the primary question, but it might have been at his trial had the issue been raised. The pertinent inquiry now is the adequacy of legal counsel provided Jones at his trial. If there was a reasonable basis for challenging the confession and it was not challenged because of the late appointment of the lawyer, the failure to make proper investigation, whether for lack of opportunity or otherwise, bears directly on the character of the representation afforded.

Had the attorney taken enough time he could with reasonable diligence have learned from the police as well as from Jones that the latter "appeared to be in a weakened condition at the time of his arrest" [11] and remained in such state at least during the first day of questioning.[12] In addition, it was a matter of record that three days intervened between his arrest and confession, a suspicious factor which demanded further probing by the lawyer.[13] Since the police apparently neglected their statutory duty to bring Jones promptly before a judicial officer for a preliminary hearing,[14] it was at least arguable that it was "not permissible to trifle with him, and detain and interrogate him, for the ulterior purpose of extracting a confession as to his own guilt, or getting information from him as to the guilt of others." [15] If the attorney needed more

---

11. This is the finding of the District Court and it is supported by the testimony of several police officers, one of whom, Chief of Police Eanes, recalled: "He seemed to be suffering from a loss of blood. He looked right pale and from the amount of blood we found in the car, I could see why."

12. It is undisputed that interrogation began the morning of the arrest. Yet a state police inspector, Tucker, testified from personal recollection as well as notes of his investigation that Jones remained "weak from loss of blood" and "was not in any condition to be questioned." This corroborated Jones' testimony that: "They first come and told me 'Get up out of the bunk there' and wanted to talk to me. I told them I was sick. They said 'Get up. I want to talk to you.' They started questioning me then about all those crimes that happened." The ill-health of a defendant during questioning by the police preceding a confession has been regarded as a substantial factor pointing to the involuntariness of the confession. Reck v. Pate, 367 U.S. 433, 441–443, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961).

13. "Confessions obtained by 'secret inquisitorial processes' * * * are suspect, since such procedures are conducive to the use of physical and psychological pressures." Gallegos v. State of Colorado, 370 U.S. 49, 50–51, 82 S. Ct. 1209, 1211, 8 L.Ed.2d 325 (1962). See Ashcraft v. State of Tennessee, 322 U. S. 143, 152, 154, 64 S.Ct. 921, 88 L.Ed. 1192 (1945); Watts v. State of Indiana, 338 U.S. 49, 54–55, 69 S.Ct. 1347, 93 L. Ed. 1801 (1949); Haley v. State of Ohio, 332 U.S. 596, 599, 600, 68 S.Ct. 302, 92 L.Ed. 224 (1948); Leyra v. Denno, 347 U.S. 556, 561, 74 S.Ct. 716, 98 L.Ed. 948 (1959); Fikes v. State of Alabama, 352 U.S. 191, 197, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957); Spano v. People of State of New York, 360 U.S. 315, 320–321, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959); Reck v. Pate, supra; Culombe v. Connecticut, 367 U.S. 568, 570–603, 622–631, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).

14. Code of Virginia, 1950 § 52–21. In Winston v. Commonwealth, 188 Va. 386, 49 S.E.2d 611, 615 (1948), it was said with reference to a five-hour jailing prior to hearing before a magistrate "[t]hat such detention was illegal is too plain for argument"; conviction reversed.

15. Sands & Co. v. Norvell, 126 Va. 384, 101 S.E. 569, 574 (1919); Winston v. Commonwealth, 188 Va. 386, 49 S.E.2d

352

time he could have gained time by advising the client not to waive indictment.

It is true that Jones did not complain spontaneously to his lawyer during their hurried meeting of his treatment by the police. But this was his first serious encounter with the police and his silence stemmed in all likelihood from the erroneous supposition that his extrajudicial statements, however obtained, concluded the issue of guilt and left him no alternative but to throw himself on the court's mercy. In any event, since the burden of proving voluntariness was on the Commonwealth,[16] the least that was demanded of counsel was some investigation of the pertinent facts and arguable points of law before counselling surrender.

■ The factual links in this chain of events, verified by the findings, unmistakably confirm the initial hypothesis, concerning which we said in Jones' first appeal, 297 F.2d at 855, that the ill-timed appointment of counsel was merely "an empty gesture and not a true satisfaction of the defendant's constitutional rights." It was no more than a gesture to equip Jones for his day in court with a lawyer of excellent reputation who sought no more than the fleeting opportunity to consult with the accused and made no effort to map out possible defenses. It was not a true satisfaction of the defendant's constitutional rights "to force him to trial with such expedition as to deprive him of the effective aid and assistance of counsel." [17]

■ We cannot acquiesce in the suggestion that because Jones told his court-appointed attorney that he was guilty there was nothing else for the lawyer to do but to plead him guilty and hope for a light sentence. As we have just indicated, avenues of defense remained open, and the manifest failure to seek them out is chargeable to counsel or the lateness of the appointment, or both, not to Jones. It cannot be presumed that a defendant, whose need of professional assistance is so great as to require appointment of counsel, is nevertheless capable of comprehending with complete clarity his fundamental rights or possible defenses to complicated charges. Such presumption is refuted by the Supreme Court's statement that the very "purpose of the constitutional guarantee of a right to counsel is to protect an accused from conviction resulting *from his own ignorance of his legal and constitutional rights,* * * *." Johnson v. Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (italics added).[18]

611, 614–615 (1948). Compare McHone v. Commonwealth, 190 Va. 435, 57 S.E. 2d 109, 112–113 (1950). But see Campbell v. Commonwealth, 194 Va. 825, 75 S.E.2d 468, 472–473 (1953).

16. Early v. Commonwealth, 86 Va. 921, 11 S.E. 795, 797 (1890); Omohundro v. Commonwealth, 138 Va. 854, 121 S.E. 908, 910 (1924); Jackson v. Commonwealth, 193 Va. 664, 70 S.E.2d 322, 328 (1952); Campbell v. Commonwealth, 194 Va. 825, 75 S.E.2d 468, 471 (1953).

17. White v. Ragen, 324 U.S. 760, 764, 65 S.Ct. 978, 980, 89 L.Ed. 1348 (1945); Powell v. State of Alabama, 287 U.S. 45, 58–59, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Avery v. State of Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.Ed. 377 (1940); Ex parte Hawk, 321 U.S. 114, 115, 64 S.Ct. 448, 88 L.Ed. 572 (1944); House v. Mayo, 324 U.S. 42, 45–46, 65 S.Ct.

517, 89 L.Ed. 739 (1945); Reece v. State of Georgia, 350 U.S. 85, 88–89, 76 S.Ct. 167, 100 L.Ed. 77 (1950); Moore v. State of Michigan, 355 U.S. 155, 160, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957). See also Turner v. State of Maryland, 303 F.2d 507, 511 (4th Cir., 1962), and authorities cited therein. Virginia recognizes these principles. Morris v. Smyth, 202 Va. 832, 120 S.E.2d 465, 466 (1961); Cf. Fitzgerald v. Smyth, 194 Va. 681, 74 S.E.2d 810, 816 (1953).

18. "Determining whether an accused is guilty or innocent of the charges in a complex legal indictment is seldom a simple and easy task for a layman, even though acutely intelligent." Von Moltke v. Gillies, 332 U.S. 708, 721, 68 S.Ct. 316, 322, 92 L.Ed. 309 (1948). "Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapa-

That purpose should not be denigrated by casual distinctions—either by design or inadvertence—as to the nature of the intended plea, for the maxim, "[t]he defendant needs counsel and counsel needs time," Hawk v. Olson, 326 U.S. 271, 278, 66 S.Ct. 116, 120, 90 L.Ed. 61 (1945), holds true irrespective of the fact that the accused ultimately pleads guilty.[19]

Of course, it is not for a lawyer to fabricate defenses, but he does have an affirmative obligation to make suitable inquiry to determine whether valid ones exist. Such a duty is imposed for the salutary reason that "[p]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered." Von Moltke v. Gillies, 332 U.S. 708, 721, 68 S.Ct. 316, 322, 92 L.Ed. 309 (1948).

In view of the undisputed showing that Jones' counsel did nothing of the sort, the inadequacy of representation goes beyond "mere mistakes or errors of counsel." Compare Snead v. Smyth, 273

F.2d 838, 842 (4th Cir., 1959). Even faulty representation, unlike a real absence of representation, presupposes at least some advance preparation. Here the case was not shipwrecked by bad seamanship; it was never launched. The failure of the attorney to preserve the defendant's right to appeal from the illegal sentence cannot be squared with a proper performance of his professional duty.

Even if the failure to inquire into the circumstances of the confession were not sufficient to warrant relief, this in combination with the inexcusable failure to object to the illegal sentence and preserve the right of appeal resulted in a denial of adequate counsel, and Jones' detention is therefore void. The District Court's order dismissing his petition for the writ of habeas corpus must be reversed and the case remanded with directions to discharge the prisoner from custody; but the effectiveness of the release order will be stayed for 60 days from the date of this opinion, to allow the Commonwealth to retry this appellant or to apply to the Supreme Court of the United States for certiorari.

Reversed and remanded.

ble, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one." Powell v. State of Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932); Johnson v. Zerbst, 304 U.S. 458, 463, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Williams v. Kaiser, 323 U.S. 471, 479 (1944); Chandler v. Fretag, 348 U.S. 3, 9–10, 75 S.Ct. 1, 99 L.Ed. 4 (1954).

19. See Williams v. Kaiser, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398 (1945); Tom-

kins v. State of Missouri, 323 U.S. 485, 65 S.Ct. 370, 89 L.Ed. 407 (1945); House v. Mayo, 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739 (1945); DeMeerleer v. People of State of Michigan, 329 U.S. 663, 67 S.Ct. 596, 91 L.Ed. 584 (1947); Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); Uveges v. Commonwealth of Pennsylvania, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127 (1948); Commonwealth of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1956); Moore v. State of Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957). The need for counsel "may exist whether an accused contests a charge against him or pleads guilty." Stonebreaker v. Smyth, 187 Va. 250, 46 S.E.2d 406, 412 (1948).