UNITED STATES of America ex rel.
Clarence WILLIAMS

v.

Joseph BRIERLEY, Superintendent.

No. 3714.

United States District Court
E. D. Pennsylvania.

Oct. 4, 1968.

Sheldon S. Toll, Philadelphia, Pa., for petitioner.

Gordon Gelfond, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

## OPINION

MASTERSON, District Judge.

The relator, Clarence Williams, presently is serving a sentence of six to thirty years in the Pennsylvania State Correctional Institution in Philadelphia, Penn-

sylvania. This sentence was imposed by the Court of Quarter Sessions of Philadelphia County on May 17, 1962, after the relator, charged on seven separate Bills of Indictment with seven separate counts of burglary, larceny and receiving stolen goods, had been tried and convicted on April 17, 1962.[1] The relator did not take a direct appeal from his conviction. Instead, four years later, in May, 1966, under the Pennsylvania Post-Conviction Hearing Act, he filed a petition for post-conviction relief in the Court of Quarter Sessions of Philadelphia County. After conducting two separate hearings this court denied the relator's petition in an Order and Opinion filed March 20, 1967. This order was affirmed by the Superior Court of Pennsylvania on August 7, 1967, and the relator's subsequent petition for allowance of appeal was denied by the Supreme Court of Pennsylvania on September 15, 1967.[2]

On October 25, 1967, the relator filed his original petition here, pursuant to Title 28 U.S.C. § 2241 et seq., for a writ of habeas corpus. On November 21, 1967, the respondent was ordered to show cause within twenty days why the writ should not be granted and the District Attorney of Philadelphia was ordered to answer or otherwise plead to the relator's petition. Subsequently, Matthew Ryan, Esquire, was appointed as counsel to represent the petitioner and a date was set for an evidentiary hearing. After familiarizing himself with the case Mr. Ryan decided that representation of

1. There is some confusion as to the precise disposition of each of the Bills of Indictment. The relator was indicted on Bills ## 1336–1342, inclusive, of the May Sessions, 1961. Entries made upon the bills themselves on April 17, 1962, indicate that Bill #1336 was nol-prossed, that sentence was suspended on Bills ##1337, 1340, 1341 and 1342, and that the relator was given a term of five to fifteen years on both Bill #1338 and Bill #1339, these terms to run consecutively. In imposing sentence, however, the trial judge did not refer to Bill #1337. N.T. p. 47, and it appears as though the relator was adjudged innocent on this Bill, N.T. pp. 34–35. In any event this

discrepancy is irrelevant to the petitioner's current contentions.

2. There is no contention here that the relator did not satisfactorily exhaust his state remedies pursuant to the requirements contained in Title 28 U.S.C. § 2254. See, e. g., Case v. Nebraska, 381 U.S. 336, 344–346, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1964). In his state petition the relator advanced each of the constitutional contentions which he presently advances. Each of these contentions was considered and rejected by the Court of Quarter Sessions for reasons elaborated in Opinions filed September 7, 1966 and March 20, 1967, and each was considered and rejected by the state appellate courts.

the petitioner would place him in a potentially embarassing position, in that certain of the petitioner's allegations challenged the effectiveness of counsel who had represented the relator at his trial. Since this attorney was a close personal friend of Ryan he requested that he be permitted to withdraw from the case. Although the petitioner assured the Court that he was satisfied with Ryan's representation, in order to avoid creating a situation potentially productive of future charges of ineffectiveness of counsel, the Court decided to accept Mr. Ryan's withdrawal and to appoint instead Sheldon S. Toll, Esquire.

Mr. Toll proceeded diligently with his investigation of the large record in this case and in May, 1968, he moved to file an amended petition. On May 10, 1968, the motion to amend was granted, and the respondent and District Attorney of Philadelphia were ordered to make their respective responsive pleadings to the amended petition by May 25, 1968.

Because various proceedings, including the state post-conviction hearings, arising out of the activities involved in this case, already had produced in excess of 1000 pages of testimony covering all the issues which the relator advances currently, Mr. Toll, at the petitioner's own request, decided to submit the case to this Court "on the law". Subsequently he entered into a stipulation with Gordon Gelfond, Esquire, an Assistant District Attorney of Philadelphia representing the respondent, that the notes of testimony of all relevant proceedings in the state courts would be made a part of the record of this case. They stipulated also that " * * * because no additional evidence relevant to these matters was necessary * * * " these state records would constitute the record upon which the Court would resolve any controverted factual issues.

In view of this stipulation between counsel, and in view of the thoroughness of the state proceedings, See, Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) the hearing scheduled for Monday, June 24, 1968, was to be confined to argument of the relevant legal issues. This hearing was conducted on June 24, and, with the Court's approval, counsel agreed to permit the relator himself to testify. Counsel were permitted twenty (20) days to brief their respective contentions.

The relator contends that his current detention is improper because it results from a trial allegedly tainted by three separate violations of the Fourteenth Amendment of the Constitution:

(1) evidence introduced at the trial was obtained by an unconstitutional search and seizure;

(2) an involuntary confession of the defendant was introduced at trial; and,

(3) defendant's representation at trial by court-appointed counsel was so perfunctory as to substantially deprive him of his Sixth and Fourteenth Amendment rights to the effective assistance of counsel.

For the reasons discussed below, the Court has concluded that relator was deprived of his right to be effectively represented by counsel and that, therefore, his writ of habeas corpus will be granted.

On the evening of Friday, April 14, 1961, in Montgomery County, Pennsylvania, the relator was arrested with two other men, Carl Smith and David Stokes, who subsequently became his co-defendants in this case. All three men were taken to the Lower Merion Township police headquarters, in Montgomery County, and, on April 15, 1961, at a magistrate's hearing, they were charged with the commission of three separate misdemeanors, i. e. carrying deadly weapons, loitering at night-time, and violating the Uniform Firearms Act. The magistrate ordered them to be held without bail in the Montgomery County Prison until a further hearing scheduled for a week later, April 22, 1961.

In contravention of the magistrate's order the police officers took the relator

and his co-defendants back to the Lower Merion police station where they kept them until at least Tuesday, April 18, 1961. On Monday, April 17, 1961, while the relator was detained in Lower Merion, without obtaining a search warrant, Detective Leo Spaeder of the Philadelphia Police Department and Detective William A. McNabb of the Lower Merion Police Department conducted a search of the Berean Manual Training School (hereafter referred to as the Berean School), 1926 South College Avenue, Philadelphia, Pennsylvania, where the relator was employed as a custodian. At the Berean School these officers seized a number of items which allegedly were the fruit of crimes with which the relator and his co-defendants were subsequently charged.[3] Also, while the relator was detained at the police station, he claims that he was beaten by the investigating officers and thus coerced into signing the "confession" which ultimately was introduced at his trial. It is undisputed that this confession was signed by the relator after he had been confined in the police station without bail for at least a four day period, without the assistance of counsel, and after he had been subjected to a sporadic sequence of interrogations by the police officers.

After his second magistrate's hearing, on April 21, 1961, the relator was transferred to the Montgomery County Prison where he remained until his trial in Montgomery County on charges not directly relevant here. This trial consumed four full trial days, from June 20th to June 23rd, 1961. The relator was convicted on 16 separate indictments and

sentenced by that Court to a four to twenty year term of imprisonment. Presently the relator is attacking the convictions resulting from this trial in a totally independent post-conviction proceeding in Montgomery County.

From the date of his Montgomery County trial until April 17, 1962, the relator was confined in the Pennsylvania State Correctional Institution in Philadelphia serving the sentence imposed upon him by the Montgomery County Court. According to the undisputed testimony of the defendant, presented at the June 24 hearing here, for the first and only time he was notified of the listing for trial of his Philadelphia charges, sometime during the evening of April 16, 1962, the night before the trial commenced. (N.T. (4), p. 47.)[4] Between June, 1961 and April 1962, he neither had requested to have counsel appointed to represent him at his Philadelphia trial, nor did the trial court appoint counsel. N.T. (4), pp. 47–48. In fact, it was only after his initial arraignment on the morning of April 17, 1962, when he entered a partial plea of guilty, that counsel was appointed to represent him. N.T., Ibid., p. 52.

After the relator's arraignment the trial judge asked him if he wanted to be represented by counsel, and then he requested a member of the Voluntary Defenders Association of Philadelphia who was in the courtroom to talk to the defendant. (N.T. (1), p. 3). The attorney who had been assigned to the courtroom with a list of cases for the day, (N.T. (2) pp. 40–41), then conferred with the defendant for a period of from

3. On April 19, and April 20, 1961, informations were filed with two magistrates in Montgomery County charging the relator and his co-defendants with a series of burglaries. The items seized at the Berean School allegedly were the fruit of these crimes and, as far as the record indicates, were not related to the crimes with which the relator and his co-defendants had been charged at the April 15th hearing and for which they had been detained at the Lower Merion police station.

4. Several transcripts are referred to in the body of this Opinion. For purposes of convenience these are given short-hand references: transcript of the trial itself —N.T. (1); transcript of the first state post-conviction hearing—N.T. (2); transcript of second state post-conviction hearing—N.T. (3); and, transcript of Federal habeas hearing—N.T. (4).

three to fifteen minutes. (Ibid., p. 20, and 41). There was a conflict in the testimony as to precisely what was discussed at this conference: according to the relator, counsel limited his advice to advocating that the relator enter a plea of guilty, (N.T. (4), pp. 53, 60); defense counsel himself, although generally conceding that he had only a vague recollection of the trial itself, (N.T. (2), pp. 40–42), testified that he discussed with the defendant at least the " * * * facts of the case * * * ", (Ibid., p. 42), although not in any detail, (Ibid., p. 43), and also, perhaps, his decision that it would be best to stipulate to certain evidence. (Ibid., p. 42). At the state post-conviction hearing, defense counsel conceded that his method of preparation was " * * * not an ideal way to try a case * * * ", (Ibid., p. 42).

After his short conference with the relator, which was carried out in open court in an atmosphere which clearly was not the optimal setting for a free interchange of information between attorney and client, defense counsel hastily perused the prosecuting attorney's file. Because the trial judge apparently desired to commence the trial as soon as possible, defense counsel was forced to limit his investigation of the case to these hurried inquiries. Unfortunately he did not even have the assistance of reviewing a Voluntary Defenders' file on the relator, because, evidently, there was none.

The relator begrudgingly accepted defense counsel's representation:

"MR. SPRAGUE: Mr. Williams, do you want * * * (defense counsel) * * * to represent you now?

CLARENCE WILLIAMS: I don't know. He don't not have the details (sic).

MR. SPRAGUE: Do you want him to represent you?

CLARENCE WILLIAMS: I might as well get it over with.

MR. SPRAGUE: You want him to represent you?

CLARENCE WILLIAMS: Yes." (N.T. p. 3).

The relator was re-arraigned, he pled not guilty, and then, without any independent examination by the Court, he agreed to waive his right to a jury trial. (N.T. (1), p. 4). Despite this hurried preparation defense counsel did not make a motion for a continuance in order to prepare the case for trial. In the time allowed for discussion with his client, defense counsel hardly had an opportunity to consider filing preliminary motions such as a motion to suppress material evidence recovered at the Berean School, or a motion to suppress the allegedly coerced confession, or a motion to sever the relator's trial from those of his alleged accomplices. In any event, none of these motions was filed.

The first witness for the Commonwealth was Detective Leo Spaeder. Detective Spaeder first testified about the locations and types of residences which the defendant allegedly had burglarized, and, while he was so testifying, counsel stipulated that the respective proprietors of these homes would testify that certain property was taken from their homes. (N.T. (1), pp. 5–8). Without any objection by defense counsel the detective then referred to the search of the Berean School and to the recovery there of the property which had been mentioned already in the stipulations between counsel. (N.T., Ibid., p. 10). Again, without any objection by defense counsel, the Commonwealth witness read into evidence the defendant's statement of April 18, 1961. (Ibid., pp. 11–13). Finally, without objection, he was permitted to read into the record the joint statement of the relator's co-defendants. (Ibid., pp. 14–18). Defense counsel did cross-examine the detective for purposes of impeaching these statements. (Ibid., pp. 20–23). He also interrogated the Commonwealth's witness, in a brief and futile attempt to contradict the purported voluntariness of the defendant's statement. (Ibid., p. 24).

After a lunch recess defense counsel for a very brief time continued his cross-

examination of Spaeder. (Ibid., p. 31.) At the conclusion of the government's case in chief, i. e. the termination of Spaeder's testimony, defense counsel made an unsuccessful motion to strike the joint statements of the relator's co-defendants. (Ibid., pp. 35–36.) In his short examination of the relator, the defense's entire case-in-chief, defense counsel attempted both to establish an alibi and to impeach the voluntariness of the defendant's statement. (Ibid., pp. 37–40.) He limited his cross-examination of the Commonwealth's rebuttal witness to precisely three questions and then rested. (Ibid., p 47.)

Immediately after the conclusion of the relator's testimony the Court adjudged him guilty on five Bills of Indictment and then questioned him for purposes of sentencing. Concluding that " * * * Williams is the principal culprit in this case.", (Ibid., p. 55), the trial judge sentenced the relator to a term of ten to thirty years imprisonment. As far as appears from the record defense counsel neither advised the relator to make a motion for a new trial or to appeal his conviction. The relator did not make a motion for a new trial nor did he appeal his conviction.

The relator advances a number of contentions upon which he bases his conclusion that he was not afforded the effective representation by counsel required in state criminal trials by the due process clause of the Fourteenth Amendment. See, Gideon v. Wainwright, 372 U.S. 335, 342–343, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Primarily he contends that the trial court's last-minute appointment of defense counsel and the negligible period of time permitted defense counsel to confer with him inevitably destroyed the effectiveness of counsel's representation. See, e. g. Fields v. Peyton, 375 F.2d 624, 626 (C.A. 4, 1967). He argues convincingly that it was impossible for his attorney to familiarize himself in fifteen minutes with the complex legal and factual background of his case.

The relator therefore concludes that counsel's last minute appointment, without more, prima facie establishes a violation of his right to effective assistance of counsel. See, Twiford v. Peyton, 372 F.2d 670 (C.A. 4, 1967). In related arguments, however, the relator also urges that a number of trial decisions made by counsel were improper and inconsistent with the relator's right to effective representation by counsel.

The Commonwealth argues initially that defense counsel's late appointment can not alone constitute a sufficient ground for concluding that the relator was deprived of his constitutional right to effective representation. See, e. g. Ray v. United States, 197 F.2d 268 (C.A. 8, 1952), and Stamps v. United States, 387 F.2d 993 (C.A. 8, 1967). It contends that the time of appointment of counsel is relevant only to the extent that it indicates a lack of opportunity for defense counsel to familiarize himself with the facts and the relevant law, See, Commonwealth ex rel. Washington v. Maroney, 427 Pa. 599, 235 A.2d 349 (1967), and that in this case the facts were not difficult, counsel, an experienced public defender, was familiar with the applicable law, and that the court provided counsel with a reasonable opportunity to determine his trial strategy.

The Commonwealth argues further that the various trial decisions made by defense counsel, e. g. his decision to stipulate to evidence, were defensible as a matter of trial strategy, and that the relator cannot satisfy his burden of proof by citing instances of trial strategy with which he might disagree but which are nonetheless not necessarily erroneous. See, Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). Finally, the Government concludes that even if defense counsel improperly conducted the case his errors were non-prejudicial because of the overwhelming evidence of the relator's guilt. In support of this position the Common-

wealth relied upon the state court's opinion in the post-conviction hearing there:

"* * * (defense counsel), known to us as a competent and thorough attorney, testified before us, in effect, that the strength of the Commonwealth' case was such that the better course of action was to leave untouched the question of search and seizure. * * * Assuming the evidence of the search and seizure had been suppressed, relator would still have been faced with the testimony of his co-defendant, the victims, and his confession." See, Opinion, filed March 20, 1967, p. 3.

This Court has reviewed the trial transcript and the notes of testimony of the relator's several post-conviction hearings with great care. We are particularly sensitive to the difficulties necessarily encounterd by public defenders, such as defense counsel in this case, who are literally swamped with a multitude of indigent defendants whose rights they are dedicated to preserving. The relevant evidence in this case, however, indicates overwhelmingly that the relator was not accorded the effective representation promised him by the Constitution of the United States.

█ In recognition of the problems necessarily encountered by court-appointed counsel hastily thrown into a case, and with regard to the difficulty of making fair post-hoc judgments as to any counsel's conduct of a case, the courts generally have established conservative standards for assaying the "effectiveness" of counsel:

"It is the general rule that relief from a final conviction on the ground of incompetent or ineffective counsel will be granted only when the trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense or without *adequate opportunity for conference and preparation*." Williams v. Beto,

(354 F.2d 698, 705 (C.A. 5, 1965) (Emphasis supplied.)

Increasingly, however, particularly in response to the Supreme Court's ever greater emphasis upon each defendant's right to have effective representation, courts have examined into the factor of "* * * opportunity for conference and preparation * * *", Ibid., focusing particularly upon the time of counsel's appointment relative to the commencement of trial:

"Courts are required to allow counsel sufficient time to inform themselves fully, to reflect maturely and to prepare thoroughly in the cases to which they are assigned, and courts can no longer tolerate perfunctory performance by appointed lawyers of the duty owed to indigent defendants". Fields, supra, 375 F.2d at 628.

See also, Jones v. Cunningham, supra, 313 F.2d 347 at 352–353, United States ex rel. Mathis v. Rundle, 3 Cir., 394 F.2d 748, Opinion filed May 7, 1968, United States ex rel. Huntt v. Russell, 285 F. Supp. 765, E.D.Pa. Opinion filed May 23, 1968, and *Washington*, supra, 427 Pa. at pp. 608–609, 235 A.2d 349.

It recently has been suggested, particularly by the Fourth Circuit, that late appointment of counsel is inherently prejudicial to the defendant's rights and a defendant need only establish such late appointment to make out a prima facie case. See, *Fields,* supra, 375 F.2d at 628. The Third Circuit most recently adopted this approach in *Mathis,* supra.

As noted above, defense counsel in this case was not appointed until the morning the defendant was arraigned and just before the trial began. There was no defense investigation file for him to examine and his opportunity to examine the Commonwealth's file was a short and hurried one. His conference with the relator, limited to fifteen minutes at most, clearly could not have satisfactorily acquainted him with the facts of the case and/or with the relator's possible defenses. The short interval between his

appointment and the trial made it impossible for him to speak with the defendant's alibi witnesses who were not in court and indeed whom the defendant himself had no opportunity to subpoena for trial.

■ In these circumstances, and particularly because of the seriousness of the charges with which the relator was faced, the late time of defense counsel's appointment was inherently prejudicial and establishes a prima facie case of violation of his right to effective assistance of counsel. See, Mathis, supra, 394 F.2d p. 753; see also, United States ex rel. Davis v. McMann, 386 F.2d 611, 620 (C.A. 2, 1967). The cases relied upon by the Commonwealth clearly are distinguishable. See, Eubanks v. United States, 336 F.2d 269 (C.A. 9, 1964) (counsel was appointed eleven days before trial), Stamps v. United States, 387 F.2d 993, 996 (C.A. 8, 1967) (counsel was present at the defendant's Commissioner's hearing, and conferred with the defendant several times during a five-day period between arraignment and trial).

■ Assuming arguendo that the late appointment of defense counsel prima facie prejudiced the relator, the Commonwealth contends that he was not in fact prejudiced because there was overwhelming evidence of his guilt. It argues that the most carefully-prepared and conscientious defense-counsel could not have secured a better result for this defendant. We can not agree.

Had defense counsel made a motion for continuance, and had the motion been granted, as would seem mandatory in view of all the circumstances of the case, defense counsel then would have had the opportunity to investigate and give mature reflection to the advisability of any one of the following courses, some or all of which may have produced a different result:

(1) Counsel could have considered a pre-trial motion to suppress the material evidence seized at the time the Berean School was searched on the ground that the search was a violation of the 14th Amendment. See, Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and Villano v. United States, 310 F.2d 680 (C.A. 10, 1962). In the event that the material evidence was suppressed, counsel also could have moved to suppress the testimony of the owners whose property was recovered on the ground that this testimony itself was the fruit of an illegal search. See, Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

(2) Counsel could have considered moving to suppress the defendant's statement which the defendant claims was not only coerced but also was given while the defendant was detained at a police station in violation of a magistrate's order that he be detained at a county prison, See generally, United States v. Myers, 384 F.2d 737, 741 (C.A. 3, 1967).

(3) Counsel could have spoken with and subpoenaed the defendant's alleged alibi witnesses.

The Commonwealth's contention that the late appointment of defense counsel did not prejudice the relator simply ignores the fact that any one of the above courses, if successful, could very well have produced an opposite result in this case. For example, if the material evidence had been suppressed, and the testimony by the burglary victims also suppressed because "tainted" by that search, then, in all likelihood, a demurrer to the Commonwealth's case would have been sustained, for the Commonwealth then would not have been in a position to prove the corpus delecti. Similarly, if the defendant's statement had been suppressed and alibi witnesses had testified and been persuasive, it is possible that the relator would have been found not-guilty.

■ To the extent that the Commonwealth's position is based upon its conviction that the relator is guilty, its contention also must be rejected because relief is to be accorded or denied to the relator

not on the basis of our twice-removed assessment of his guilt or innocence, but rather on our determination of whether or not he received the effective assistance of counsel to which every man, guilty or innocent, is entitled. Speculation as to his guilt is irrelevant. See, Commonwealth ex rel. Johnson v. Russell, 428 Pa. 440, 239 A.2d 399, 406 (Dissenting Opinion of Roberts, J., 1968).

For the reasons discussed above the relator's petition for a writ of habeas corpus is granted. The execution of the writ is stayed for a period of thirty (30) days within which the Commonwealth of Pennsylvania may re-try relator, or appeal. In the event the Commonwealth appeals, any further stay must be sought in the Court of Appeals.

The Court is indebted to Sheldon Toll, Esquire, for his intelligent and thorough representation of the relator, performed with painstaking attention to detail and without compensation.