**Howard Walter WILLIAMS, Petitioner-Appellant,**

v.

**Lake F. RUSSELL, Warden Tennessee State Penitentiary, Defendant-Appellee.**

**No. 18980.**

United States Court of Appeals
Sixth Circuit.

Dec. 31, 1969.

---

3. *Daly* was decided after the institution of this proceeding but prior to the district court's show cause order.

William W. Vodra, Court appointed, of Taft, Stettinius & Hollister, Cincinnati, Ohio, for appellant.

Robert H. Dedman, Nashville, Tenn., for appellee; James C. Dale, III, Special Counsel, State of Tenn., Nashville, Tenn., on brief, George F. McCanless, Atty. Gen., and Reporter, State of Tenn., of counsel.

Before EDWARDS and PECK, Circuit Judges, and BROOKS,* District Judge.

EDWARDS, Circuit Judge.

This is an appeal from a denial of a petition for writ of habeas corpus entered by a District Judge in the United States District Court for the Middle District of Tennessee.

Appellant had been convicted after jury trial on a charge of armed robbery in a state court in Nashville, Tennessee, and sentenced by the jury on November 4, 1965, to 15 years in the state penitentiary. At trial he was represented by privately retained counsel. Subsequently, with different counsel, he appealed, alleging inadequacy of state proofs to support the conviction and bias on the part of the jury. The Tennessee Supreme Court affirmed the conviction on November 14, 1966. Appellant then filed a petition for writ of habeas corpus in the Criminal Court of Davidson County, claiming inadequacy of his legal representation at his trial. On denial of this petition without hearing he took an appeal to the Tennessee Supreme Court which affirmed the lower court judgment.

Appellant thereupon filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Tennessee, claiming that he had been deprived of his Sixth Amendment rights by being denied the "effective" assistance of counsel. The District Judge thereupon conducted a full evidentiary hearing, taking the testimony of appellant, his claimed alibi witnesses

and the attorney who represented him at trial. The record of the original state trial was also introduced in evidence and considered.

Appellant's contention before the District Court, and now before us, was and is that his privately retained lawyer did not prepare adequately for the trial, did not move for severance of his trial from that of a co-defendant who pled guilty, did not call certain claimed alibi witnesses to the stand, and advised defendant against taking the stand himself.

On these issues the District Judge found:

"Going to each one of these grounds separately, the first being that it is alleged that the attorney failed to move for a severance in the case.

"This is a clear example of an instance where an attorney is called upon to exercise his judgment. This is a technical matter. This other co-defendant entered a plea of guilty in the case, and it was not a case where testimony would be offered as to a confession made by a co-defendant which would implicate this particular defendant or anything of that sort. It wasn't that kind of a case.

"The attorney undoubtedly knew that the matter of granting a severance addressed itself to the discretion of the trial judge, and that in all probability, unless there was some strong reason for severance, the Court would not be inclined to grant it. This is true because when these cases of joint indictments are tried, of course it avoids the waste of judicial time to try the cases together rather than to try them separately.

"This was a technical matter, as I view it, which the attorney was entitled to consider, and to decide one way or the other as he saw fit, and in this case, he has no particular recollection, no distinct recollection about why he did not move for a severance, but the Court now, looking back in retrospect, cannot say that his failure to move for a severance con-

stitutes such a neglect of duty that the judgment rendered in the case was void.

"We just simply cannot hold lawyers to perfection to guarantee that they will be absolutely free from error, and I don't believe the due process clause contemplates any such thing. Lawyers in cases of this kind are going to make mistakes, and it is unavoidable unless we expect perfection of human nature, and that we cannot expect.

"The second ground, that the lawyer failed to call key witnesses on the alibi. This proposition about the alibi confronts lawyers in many criminal cases. A defendant will come in in the case of a robbery and say he has an alibi and has the witnesses to prove that he was at some other place at the time the offense took place. Then he will name members of his family usually, and other people closely connected with him, and then they will be sometimes called in as alibi witnesses and sometimes not.

"But here was a case, and I'm not saying that these alibi witnesses in this case in any way testified falsely on the witness stand, I'm not saying that they did do so. In fact, I think they did testify truthfully in this courtroom. I have no reason to believe otherwise, but it is very apparent in listening to their testimony that there are discrepancies in their testimony as to the time involved. Some of the witnesses can give hours that are perfectly consistent with this defendant being absent at the time this offense occurred. Some of them are not sure one way or the other. They give or take an hour and a half or so or thirty minutes or so one way or the other. They are not able to pin down the exact time, and that's perfectly understandable that they would not be able to pin down the exact time.

"In fact, had they undertaken to say that they were absolutely positive that it was nine or nine-thirty or something of that sort, I would have been inclined to think that they were testifying falsely, and I think the fact that they are unable to be exact on this point does demon-

strate that they are testifying just as truthfully as they possibly can.

"But that in my opinion is beside the point now. The question is whether or not the lawyer, in failing to call these witnesses, was guilty of such a neglect of duty, such negligence and carelessness that this Court, some several years later, should come along and set the judgment aside.

"As I view it, the lawyer was met with the necessity of, again, using his good judgment. First, the defendant had been identified clearly by the persons who were robbed or the people at the store which was robbed, and then he was later identified in a lineup. The lawyer knew that testimony. Then he heard the testimony of the two officers to the effect that on the 16th, this man was capable of jumping out of a car and running and even jumping over a fence in an effort to make an escape.

"The attorney knew that the alibi witnesses, each one of them, would testify that on the 16th, the defendant was in such condition that he would not be able to do that. That's what these witnesses have told me here on the witness stand, that he was not in shape to run down a street and jump over a fence. His leg was in such shape he could not do that.

"The attorney had very carefully and rigidly cross examined the state officers who testified as to the arrest on the 16th, and of course as to other matters perhaps, but particularly as to the arrest on the 16th, and his ability to run, and so on.

"If in the face of that testimony, which stood up under his rigid cross examination, or at least he was entitled to believe that it stood up under his rigid cross examination, if in the face of that he had come along and put on these alibi witnesses, and then they had said that he was not able to do this kind of thing on the 16th, run and jump over a fence, then there would certainly have been a conflict in the testimony between the state officers which had stood up under

this cross examination, and the testimony of these alibi witnesses.

"He says he discussed this with these witnesses and that they said, well, maybe we better not testify that he was unable to run on the 16th. If he did discuss it with the alibi witnesses, and they said that, if that was their response, and I'm not saying it was or wasn't, but let's assume that that was their response for the present, if they had said that to him, that they were willing to change their testimony, then he was entitled to conclude that those witnesses would not stand up under cross examination.

"If they were willing to water down their testimony and change it to suit the situation, suit the facts that favor the defendant, then that lawyer was entitled to say, these are alibi witnesses that in my judgment shouldn't go on the witness stand.

"That is a typical kind of problem that confronts a lawyer in a lawsuit, and if he cannot use his good judgment under those circumstances, and we lay down an arbitrary rule that he cannot under those conditions use his good judgment, then we are simply undermining the ability of a lawyer to represent his client. That, to me, is very clear.

"Now let's take it on the other hypothesis, that Mr. Garfinkle is mistaken about this, and that they told him that on the 16th, just like they testified here today, that he was not able to run and jump and use his leg on the 16th, then Mr. Garfinkle knew that if he put them on the witness stand, there would be that conflict between their testimony and the testimony of these officers, which might, very probably, have the effect of causing the jury to completely disregard their testimony, and to treat it as of no value, and that under those circumstances, it would be better to keep the defendant off the stand, keep the alibi witnesses off the witness stand, and rely upon the presumption of innocence which prevails in a criminal case.

"Something of that kind must have taken place, either one or two of those alternatives took place. In either event, the lawyer had a right and even a duty to exercise his good judgment or what he thought at the time was his good judgment, and if that judgment was rendered honestly and not dishonestly, and if he was not flagrantly negligent or careless or clearly not in keeping with what should have been done, then no Court at a later date has any right, on a collateral attack, to come along and set that aside and say, no, you should have done this, you should have done that, my judgment is you didn't conduct the trial properly, because your judgment should have been something else other than what it was. It's very obvious that we cannot adopt a rule of that kind.

"The third point that the lawyer did not properly prepare the case in that he just talked to the petitioner for five minutes.

"Well, the petitioner says that he talked to him about five minutes. The lawyer himself says that he talked to him several times, saw him on a number of different occasions, and got all the facts he needed. He certainly got enough from him to get the names of all of these witnesses who were down there at the courthouse either under subpoena or otherwise. He got enough to know what their testimony would be and the nature and character of the testimony of the petitioner would be, defendant at that time.

"The burden of proof in this case is definitely on the petitioner to convince the Court that this judgment should be set aside. This is a salutary rule which places this burden on the petitioner, because here is a solemn judgment of a state court, a trial before the court and jury in the traditional way under our system, and then a petition many years later asking the Court to rehash the whole thing, go over the entire matter, and then set it aside.

"It's a very good rule under those circumstances that the petitioner has the clear burden of proof to substantiate his contentions and it's very clear to me in

this case he has not done that, has not carried the burden of proof on any one of these three grounds or on any general ground that the lawyer was incompetent."

We have quoted at this length from the District Judge's opinion as dictated in court at the hearing on this motion to indicate the time and attention which the District Judge gave to appellant's contentions. We have ourselves reviewed the entire record of the hearing before the District Judge and the transcript of the state court trial as well, and find it impossible to say that the District Judge was in error in his view of the evidence.

Appellant's counsel in his well prepared and vigorous brief relies in particular upon this court's opinion in Schaber v. Maxwell, 348 F.2d 664 (6th Cir.1965), and on Judge Sobeloff's opinion in Jones v. Cunningham, 313 F.2d 347 (4th Cir.), *cert. denied,* 375 U.S. 832, 84 S.Ct. 42, 11 L.Ed.2d 63 (1963). We reiterate the Sixth Amendment views expressed by Chief Judge Phillips for this court in *Schaber* and share those expressed by Judge Sobeloff. But in *Schaber* in a capital case counsel out of sheer ignorance failed to enter a written plea of insanity (as mandated by Ohio law) when that was the only defense which they sought to tender and the trial court let the trial proceed without ever calling to the attention of counsel the fundamental error. If appellant's counsel erred (and we do not hold that he did) his errors were much closer to mistakes in trial tactics (*see* Scott v. United States, 334 F.2d 72 (6th Cir.), *cert. denied,* 379 U.S. 842, 84 S.Ct. 81, 13 L.Ed. 2d 48 (1964), and Hayes v. Russell, 405 F.2d 859 (6th Cir.1969)) than to the facts of the *Schaber* case. *Cunningham* is also clearly inapposite. There petitioner had been denied any counsel until the very morning of the trial when a lawyer was appointed who, lacking any preparation, was merely present at the proceedings where pleas of guilty were entered. Here appellant had experienced counsel of his family's own choice and vigorous representation by same during his trial. The failure of counsel's efforts may well have been lack of facts to support the not guilty plea—rather than incompetence.

The most disturbing piece of evidence in this record from the point of view of the result which we reach is the affidavit of the sheriff of Davidson County attesting that a record of visitors to the jail was kept, that it had been searched, and that Williams had had no visits from any lawyer recorded on that record. The District Judge's opinion does not deal directly with this affidavit, although it was before him. Williams' lawyer, without claiming precise memory in relation to exactly when he made the visit, did assert that he had talked to Williams several times before the trial. This seeming discrepancy may be partially explained by the fact that the case was called for trial on one day and then continued until the next.

The fact that Williams' lawyer was privately retained, the fact that he testified in effect that he had time for adequate preparation and prepared, the fact that he had 34 years of experience in trying criminal cases, and the fact that Williams made no complaint about ineffectiveness of his privately retained counsel in his direct appeal to the Tennessee Supreme Court all tend to support the finding of fact of the District Judge that Williams was not deprived of competent and effective counsel, in violation of the Sixth Amendment.

We should add, however, that there is an additional fact which has weighed heavily in favor of affirmance of the judgment of the District Court. We have ourselves read the transcript of the original state court trial with care. It appears to us that that record demonstrates that Williams did have the services of a competent lawyer who knew his case and sought to make the best defense for his client which was in his

judgment available. An adverse jury verdict in a criminal case does not necessarily demonstrate ineffectiveness of counsel.

The judgment of the District Court is affirmed.