Gary Lee TOMPA, Appellant,

v.

COMMONWEALTH OF VIRGINIA ex rel. W. K. CUNNINGHAM, Jr., Superintendent of the Virginia State Penitentiary, Appellee.

No. 9248.

United States Court of Appeals Fourth Circuit.

Argued Jan. 17, 1964.

Decided March 31, 1964.

Lewis T. Booker, Richmond, Va. (Court-assigned counsel), for appellant.

Reno S. Harp, III, Asst. Atty. Gen. of Virginia (Robert Y. Button, Atty. Gen. of Virginia, on brief), for appellee.

Before HAYNSWORTH and J. SPENCER BELL, Circuit Judges, and BARKSDALE, District Judge.

BARKSDALE, District Judge:

This is an appeal from a judgment of the District Court of the Eastern District of Virginia, entered on September 6, 1963, denying a petition for a writ of habeas corpus. On November 12, 1959, petitioner, Gary Lee Tompa, armed with a gun, broke into the City Jail at Bristol, Virginia, and effected the release of Joe Patrick, a prisoner then incarcerated in the jail. Tompa effected Patrick's release, either by forcing the jailer at gunpoint to unlock Patrick's cell, or by taking the keys from the jailer and unlocking Patrick's cell himself. Tompa was soon apprehended, and tried on February 10, 1960, in the Corporation Court of the City of Bristol, convicted, and sentenced to serve two years in the penitentiary for feloniously aiding in the escape of a prisoner. Tompa has never questioned the validity of that sentence. However, at the time, he was tried upon the charge of armed robbery of the jailer's keys, convicted, and sentenced to serve a term of eight years in the penitentiary, which sentence he is now serving. It is this latter conviction which is now under attack. On December 23, 1959, a member of the bar of the City of Bristol was appointed to represent Tompa, and he did represent Tompa in his trial for the two offenses charged. Tompa did not appeal his conviction to the Supreme Court of Appeals of Virginia, but he filed a petition to that Court for a writ of habeas corpus.

Tompa complained that a witness, Charles Mumpower, was subpoenaed for his trial, but that the subpoena was not served until the day of the trial and consequently Mumpower did not appear

until after the petitioner was convicted. His petition, *inter alia*, recited:

"The trial court appointed Counsel to represent Petitioner, and Petitioner informed Counsel that he had a witness whose testimony was essential. Petitioner gave Counsel the name and address of his witness and was advised by Counsel that the witness would be summon (sic) to Court to testify in his behalf.

"\* \* \* \*

"Petitioner would raise the following point in this habeas corpus proceeding.

"I. That he was denied the opportunity to have his witness testify during his trial."

He also said:

"It is vain to give the accused a day in Court, with no opportunity to prepare for it, or to guarantee him the right to witnesses without giving the later (sic) any opportunity to give testimony for him \* \* \* How shabby in contrast and how lacking in the sense of Civic duty done is the picture of defense Counsel allowing the defendant to go to trial in a Capital Case in absent (sic) of the defense witness."

The witness Mumpower, to whom Tompa was referring, had been a prisoner in the Bristol Jail at the time of the jail break. Tompa made no allegation that he was denied the right to call other witnesses or that his counsel was ineffective.

The respondent, by counsel, filed an answer to Tompa's petition in the Supreme Court of Appeals of Virginia, and that Court denied the writ saying in part:

"(T)he court doth find that the petitioner is presently detained under a valid judgment \* \* \* and that petitioner alleges in his petition a matter refuted by respondent and which, additionally, would be cognizable only on appeal from his conviction. \* \* \* \*"

Tompa's petition to the Supreme Court for certiorari was denied.

Thereafter, Tompa filed his petition of habeas corpus in the District Court, which appointed counsel for Tompa and held a plenary hearing on May 2, 1963. In this petition, Tompa alleged that he was denied the opportunity to call Mumpower and others as witnesses, and also that he was denied the effective assistance of counsel in his trial for armed robbery.

Respondent concedes that Tompa has exhausted his state court remedies concerning his contention that he was denied the right to introduce the testimony of Mumpower, so the District Court held a plenary hearing on that issue, considered it on its merits, and concluded "that the fact that Mumpower was not used as a witness did not under the circumstances deprive petitioner of a right afforded by the United States Constitution."

The facts and circumstances surrounding the Mumpower situation are different from the situation as to other witnesses. It appears from the evidence that, on the day of the trial, petitioner told his counsel that Mumpower's testimony would be helpful to him. Counsel interviewed Mumpower in the court house during the trial. A crucial question in petitioner's trial for armed robbery was whether or not he did take the jailer's keys. Upon interviewing Mumpower, counsel found him, at least partially, under the influence of liquor and Mumpower told him that petitioner did have the jailer's keys during the jail break. For these reasons, counsel did not call Mumpower as a witness for petitioner, nor did he move for a continuance on the ground of Mumpower's insobriety. It is true that, in his deposition taken for use in the plenary hearing held by the District Court, Mumpower stated that he did not see petitioner with the keys. However, petitioner's counsel testified that, when he interviewed him, he did not think that Mumpower's state of intoxication would have prevented him from accurately recalling the facts that happened that night, and that from his

reputation it was doubtful that Mumpower would ever be completely sober if called as a witness.

■ The District Court found that Mumpower, being in the court house available for call as a witness, no state action denied petitioner the right to have him testify. "He was not used as a witness because he told petitioner's counsel that he had seen petitioner with the keys. Petitioner's counsel deemed that Mumpower's testimony would be detrimental to the petitioner." We agree with the District Court's conclusion that the fact that Mumpower was not called as a witness did not deprive petitioner of any constitutional right. It is difficult to perceive how it might have been helpful to petitioner to call Mumpower as a witness in his behalf or to move for a continuance on account of his insobriety. But if counsel made a mistake, it was clearly a mistake in judgment or in trial tactics and it has been repeatedly held that such mistakes do not deprive an accused of a constitutional right. Bolden v. United States (D.C.Circuit 1959), 105 U.S.App.D.C. 259, 266 F.2d 460, Snead v. Smyth, Supt. etc. (4th Circuit 1959), 273 F.2d 838. In the latter case, speaking for the Court, Judge Soper said (273 F.2d p. 842):

"* * * It is generally held that mere mistakes or errors of counsel are not sufficient to establish a violation of the defendant's constitutional right. It is only in such extreme instances where the representation has been so inadequate as to make a farce of the trial that it can be said that the prisoner was deprived of his constitutional rights. It has been repeatedly held that in case of counsel selected by the defendant the commission of what retroactively may appear to be errors of judgment on the part of the attorney does not constitute a constitutional lack of due process and does not defeat the jurisdiction of the trial court. There was in the pending case no such lack of legal assistance as was held in Johnson v. Zerbst, 304 U.S.

458, 58 S.Ct. 1019, 82 L.Ed. 1461, to deprive the court of jurisdiction. There was no allegation in the petition of improper conduct or representation of inconsistent interests by the attorney as was held to be fatal in such cases as Lunce v. Overlade, 7 Cir., 244 F.2d 108 [74 A.L.R.2d 1384]; Jones v. Huff, 80 U.S.App. D.C. 254, 152 F.2d 14. The facts in the pending case more resemble those in the following cases in which the errors complained of proved to be mere mistakes or errors of judgment of the attorney, which are uniformly held not to deprive the court of jurisdiction, especially where no prejudice to the prisoner appears. United States ex rel. Darcy v. Handy, 3 Cir., 203 F.2d 407, 425, 426, certiorari denied Maroney v. United States ex rel. Darcy, 346 U.S. 865, 74 S.Ct. 103, 98 L.Ed. 375; Application of Hodge, 9 Cir., 262 F.2d 778, 780; Taylor v. United States, 9 Cir., 238 F.2d 409, 413, certiorari denied 353 U.S. 938, 77 S.Ct. 817, 1 L.Ed.2d 761; Morton v. Welch, 4 Cir., 162 F.2d 840, certiorari denied 332 U.S. 779, 68 S.Ct. 44, 92 L.Ed. 363; United States ex rel. Weber v. Ragen, 7 Cir., 176 F.2d 579, certiorari dismissed 338 U.S. 809, 70 S.Ct. 49, 94 L.Ed. 489."

See also the very interesting article, "Effective Assistance of Counsel", 49 Virginia Law Review 1531, wherein on page 1537, footnote 45, the author says:

"Moreover, the failure to call witnesses is a matter within the attorney's judgment and it cannot be relied upon as grounds for reversal."

■ Petitioner's counsel contends that Tompa has exhausted his state remedies on the issue of ineffectiveness of counsel and the denial of his right to have the benefit of witnesses other than Mumpower. It would seem that Tompa's complaint about not having the benefit of witnesses other than Mumpower and the failure of his counsel to interview such witnesses, should be considered as one specification in his charge of ineffective-

ness of his counsel. Counsel for respondent denies that Tompa has exhausted his state remedies on the issue of the effectiveness of his representation by counsel, and asserts that there is now, and has been at least since 1961, appropriate procedure for a plenary hearing on this issue in the state courts. Respondent's counsel assured the District Court, and has assured us, that should Tompa file a petition for a writ of habeas corpus to the Supreme Court of Appeals of Virginia, complaining that he was denied the effective assistance of counsel at his trial, the Supreme Court of Appeals would issue its writ of habeas corpus returnable to the bar of the Corporation Court for the City of Bristol for a plenary hearing. Petitioner's counsel contends that Tompa's petition to the Supreme Court of Appeals of Virginia in 1960 raised the issue of the effectiveness of his representation. With this, we cannot agree. It is true that, in his petition, Tompa did cast some aspersions on his trial counsel, but it is perfectly obvious from a consideration of the petition that the sole basis of his petition was the failure of his counsel to call Mumpower as a witness in his behalf. The charge of ineffectiveness of counsel is a serious one, and before such a charge can be considered by a court, it must be definitely asserted so that the accused counsel may have an opportunity to refute it. This is not to say that a charge of ineffectiveness of counsel must be artfully, or even grammatically, asserted, but it must be so definitely asserted as to permit an answer and the making up of an issue. Brown v. Smyth, Supt., etc. (4th Circuit 1959) 271 F.2d 227.

The District Court found that the issue about witnesses other than Mumpower concerned the effectiveness of petitioner's counsel, and that petitioner at no time had attempted to litigate these issues in the state courts. The District Court concluded that Tompa had "not exhausted his state remedies concerning his claim that he was denied a right to summon witnesses other than Mumpower and his claim that he did not receive effective representation by his counsel." We agree. The District Court's order denying Tompa's petition for a writ of habeas corpus, specifically provided:

"The denial of this writ is without prejudice to the petitioner to seek relief in the courts of the Commonwealth of Virginia on his claim pertaining to witnesses other than Mumpower and on the effectiveness of his trial counsel's representation."

The recent case of Tune v. Cunningham (4th Cir. 1963) 319 F.2d 823, is ample authority for the conclusion reached by the District Court. There, petitioner's principal contention was that he had been denied counsel in his original trial. At a plenary hearing in the District Court on this issue, it clearly appeared that two lawyers had been appointed to defend petitioner. However, circumstances also appeared which cast doubt upon the effectiveness of his representation. The District Judge found that counsel were in fact appointed, and added that, in his view, they acted properly, but without findings of fact supporting his conclusion of adequacy of the lawyers' conduct, and dismissed the petition. On appeal, this Court said (319 F.2d p. 824):

"On several occasions we have held that performances of counsel very similar to that charged here did not constitute effective legal assistance, and that allegations such as those made here require a plenary hearing. Edgerton v. North Carolina, 315 F.2d 676 (4th Cir. 1963); Jones v. Cunningham, 313 F.2d 347 (4th Cir. 1963); Turner v. Maryland, 303 F.2d 507 (4th Cir. 1962); Jones v. Cunningham, 297 F.2d 851 (4th Cir. 1962). In the absence of specific findings, we are unable to determine upon what facts the District Court's judgment was based. Normally it would be appropriate to remand the case for specific findings, but the Commonwealth contends that when the petitioner claimed

that he was afforded no counsel at his original trial, the state made its investigation and came into the federal court prepared to defend only on this issue and that the claim of inadequate performance by counsel was never presented in the state courts. In these circumstances we agree that this issue should not be raised for the first time in a federal court. Tune should have an opportunity to present his new claim to the state courts, and the judgment appealed from will be affirmed without prejudice to any later proceedings after available state remedies have been exhausted."

It follows, therefore, that the judgment of the District Court will be

Affirmed.

J. SPENCER BELL, Circuit Judge (dissenting):

I dissent from what I consider a niggardly denial of the Great Writ. Respectfully, I deplore the statement by the majority that a trial must be reduced to a farce before an indigent's rights to adequate counsel will be recognized. I protest also against so excessively literal a reading of this pro se petition as to hold that it did not raise incompetence of counsel and that this was not the issue before the state court. In explanation of his conduct of the trial, counsel stated that he did not remember whether or not Tompa gave the list of witnesses but that he would not have interviewed them because they were convicted criminals, and he further added that his strategy was not to dig-

nify the state's makeweight charge of armed robbery by offering evidence to disprove it! I think this explanation comes close to disclosing the farce which the cited rule demands.

I think the pro se state court petition adequately raised the issue of incompetence of counsel when read with the latitude required by Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948).[1]

Tune v. Cunningham, 319 F.2d 823 (4 Cir. 1963), is not authority here. Tompa's state court petition spoke in general terms of "no preparation" and "witnesses * * * without * * * any opportunity to give testimony for him." This language clearly raised the issue of incompetence of counsel because of lack of preparation. The allegations with respect to the one witness Mumpower raised the same issue in a specific context. This is very different from an allegation of total absence of counsel where incompetence was the real issue. "Where the layman's papers clearly show what he is driving at, it is usually in the interest of justice and may in the long run save time to temper the reading of the papers with a measure of tolerance." United States v. Glass, 317 F.2d 200, 202 (4 Cir. 1963). Cf. Roberts v. Pegelow, 313 F.2d 548 (4 Cir. 1963).

Nothing is to be gained either for efficiency of the judicial process or for the "delicate balance of state-federal relations" in the practice of sending such petitions back through the legal maze in order to get an on-the-merit ruling on a point that was obvious from the very beginning—nothing except perhaps that

1. "It was enough if [the prisoner] presented an allegation and supporting facts which, if borne out by proof, would entitle him to relief. Prisoners are often unlearned in the law and unfamiliar with the complicated rules of pleading. Since they act so often as their own counsel in *habeas corpus* proceedings, we cannot impose on them the same high standards of the legal art which we might place on the members of the legal profession. Especially is this true in a case like this where the imposition of those

standards would have a retroactive and prejudicial effect on the prisoner's inartistically drawn petition. Cf. Holiday v. Johnston, 313 U.S. 342, 350 [61 S.Ct. 1015, 1017, 85 L.Ed. 1392]; Pyle v. Kansas, supra [317 U.S. [213] at page 216] [63 S.Ct. [177], at page 178, 87 L. Ed. 214]; Tomkins v. Missouri, 323 U.S. 485, 487 [65 S.Ct. 370, 371, 89 L.Ed. 407]; Rice v. Olson, 324 U.S. 786, 791, 792 [65 S.Ct. 989, 992, 89 L.Ed. 1367]." 334 U.S. at 292, 68 S.Ct. at 1063, 92 L. Ed. 1356.

the petitioners will, in sheer exhaustion and frustration, submit to the injustice. I think the petitioner had exhausted his state remedies and was entitled to a federal hearing on the issue of incompetent counsel.