Luther **DURHAM, Jr., Petitioner,**

v.

**W. D. BLANKENSHIP, Supt.,
Respondent.**

Civ. A. No. 77–0111–A.

United States District Court,
W. D. Virginia,
Abingdon Division.

Nov. 3, 1978.

Mark M. Lawson, White, Elliott & Bundy, Bristol, Va., for petitioner.

Linwood T. Wells, Asst. Atty. Gen., Commonwealth of Virginia, Richmond, Va., for respondent.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Petitioner Luther Durham, Jr., an inmate at Bland Correctional Center, challenges the constitutionality of his incarceration by bringing this 28 U.S.C. § 2254 petition for a writ of habeas corpus against respondent W. D. Blankenship, Superintendent at Bland. Petitioner, on the grounds that his constitutional right to the effective assistance of counsel was denied, challenges the validity of his conviction for first degree murder in the Circuit Court of Frederick County, Virginia. This court has appointed an attorney to assist petitioner, and the case is currently before the court on petitioner's motion for summary judgment pursuant to Fed.R.Civ.P. 56. Both petitioner and respondent have submitted briefs on this motion.

The matter is properly before the court on a motion for summary judgment. A plenary hearing on the merits is unnecessary when the state court records are adequate for determining the validity of petitioner's claims. *Altizer v. Paderick,* 399 F.Supp. 918 (E.D.Va.1975), *aff'd per curiam* 542 F.2d 1250 (4th Cir. 1976). Petitioner Durham has had a full and fair hearing on the record in a state court habeas corpus proceeding on the grounds of ineffective assistance of counsel, and this court is able to dispose of the case by examining the

state records and transcripts. *See* 28 U.S.C. § 2254(d); Rule 8, Rules Governing Section 2254 Cases in the United States District Court.

Petitioner has exhausted his state remedies as required by 28 U.S.C. § 2254(b).

### I. *Statement of Facts*

Mrs. Waltine Hoover and her mother, Mrs. Annie Snow, were stabbed to death on February 23, 1963, in their home near Double Toll Gate in Frederick County, Virginia. On June 23, 1964, while in the Virginia State Penitentiary for the commission of other offenses, petitioner Luther Durham, Jr. confessed his involvement in the Double Toll Gate slayings to Virginia State Police Investigators E. M. Lloyd and L. F. Craft. Petitioner gave and signed a statement, transcribed by Investigator Craft, which admitted that he and one Otha Howard had broken into the Hoover home, and that while petitioner had gone back out of the house for a sack, Howard had murdered the two women.

Petitioner demonstrated his familiarity with the homicides and corroborated his confession by reenacting the crime on July 14, 1964. Without any assistance or directions from the state investigators who accompanied him, petitioner led them to the Hoover home, which was located in rural Frederick County. Petitioner further demonstrated his complicity by using a knife to throw the latch on the door, just as he claimed to have done when the women were slain. Petitioner was able to observe to the state investigators at the reenactment that a new lock had been installed on the door since the crime had been committed. Petitioner continued to insist that Howard murdered the women while petitioner had stepped out of the house for a sack to carry the stolen goods. After this reenactment, petitioner was brought to the Frederick County Commonwealth's Attorney's office, where petitioner signed another written statement similar to his earlier confession.

On July 20, 1964, a Frederick County grand jury indicted both Howard and petitioner Durham for the Double Toll Gate killings. The court on July 27, 1964, appointed two attorneys to represent petitioner, who was committed to Southwestern State Hospital for examination and was later certified mentally competent to stand trial. On November 16, 1964, petitioner entered a plea of not guilty to the indictment. On March 15, 1965, while in jail awaiting trial, petitioner signed a third written statement confessing his involvement in the murders, but this time petitioner named one George Easter instead of Otha Howard as being the actual killer. On March 18, 1965, the court allowed petitioner to change his plea to guilty. Petitioner escaped from jail on June 1, 1965, and was recaptured that same day. Petitioner was later allowed to change his guilty plea to not guilty on July 2, 1965.

After having earlier allowed petitioner's two court-appointed attorneys to withdraw, the court on September 1, 1965, appointed David G. Simpson to represent petitioner. The Commonwealth's Attorney expressed his concern that there might be a conflict of interest, since Simpson had been one of the attorneys who had earlier represented Otha Howard, the party petitioner had implicated in the killings. However, the charges against Howard had been previously nolle prossed, apparently because the Commonwealth's Attorney had been convinced that petitioner was trying to frame Howard. Simpson stated that there was no conflict as far as he was concerned, and when the court asked petitioner if he objected to Simpson's representing him, petitioner answered in the negative. The court allowed the appointment to stand, and Simpson represented petitioner at his trial.

On November 18, 1965, following a three-day trial, a Frederick County jury found petitioner Durham guilty of first degree murder in the death of Annie Snow and imposed a life sentence. The Virginia Supreme Court denied petitioner's writ of error, *Durham v. Virginia*, 207 Va. lxxxiii (1966), and the United States Supreme Court denied his petition for a writ of certiorari. *Durham v. Virginia*, 387 U.S. 910, 87 S.Ct. 1694, 18 L.Ed.2d 629 (1967). Simp-

son represented petitioner through both of these appeals.

Several years later, represented by two other attorneys, petitioner sought federal habeas corpus relief. On July 16, 1971, this court granted petitioner relief on the grounds that the Frederick County Circuit Court unconstitutionally allowed a biased juror to sit at petitioner's trial. *Durham v. Cox,* 328 F.Supp. 1157 (W.D.Va.1971). Represented this time by Simpson and another court-appointed attorney, Billie Joe Tisinger, petitioner was retried in Frederick County Circuit Court and was again found guilty and again sentenced to life imprisonment. It is the validity of this conviction that petitioner challenges here before this court on the grounds of ineffective assistance of counsel.

After his second conviction in state court, petitioner Durham, represented by Simpson and Tisinger, applied for and was granted a writ of error to the Virginia Supreme Court, which subsequently affirmed the 1972 trial court. *Durham v. Commonwealth,* 214 Va. 166, 198 S.E.2d 603 (1973). Petitioner, then represented by still another attorney, sought state habeas corpus relief from the Frederick County Circuit Court on the grounds that Simpson's and Tisinger's representation was so lacking as to be ineffective assistance of counsel. At the conclusion of an evidentiary hearing held on June 1, 1976, the court denied the petition, and petitioner appealed his habeas corpus claim to the Virginia Supreme Court, which failed to grant a writ of error.

On March 7, 1977, petitioner Durham filed his petition for a writ of habeas corpus in this court on the grounds of ineffective assistance of counsel at his 1972 trial. Respondent Blankenship filed a motion to dismiss, and petitioner filed a reply. This court appointed counsel to assist petitioner and ordered that this court's records be expanded to include the record of petitioner's 1965 trial, the transcript and record of petitioner's 1972 trial, and the transcript and record of petitioner's 1976 state habeas corpus proceeding. The matter is currently before the court on petitioner's motion for summary judgment.

## II. *Questions of Law*

In applying for federal habeas corpus relief, petitioner Durham's grounds are that he was denied his constitutional right to effective assistance of counsel at his 1972 retrial. (Hereinafter, unless the other state court proceedings are specifically referred to, this court confines its scrutiny to the 1972 trial, when the allegedly unconstitutional acts complained of occurred.) An analysis of petitioner's claim reveals that it can be divided into two issues for consideration: (i) whether a conflict of interest existed, which compromised defense counsel's representation of petitioner and (ii) whether defense counsel's representation was so lacking as to be ineffective assistance of counsel.

■■■ In resolving this controversy, it is important to keep two basic principles in view. First, federal habeas corpus is not mere appellate review, and relief is granted only for violation of federal constitutional rights. Second, habeas corpus is a civil action in which petitioner carries the burden of proof in withstanding the strong presumption of the constitutionality of state judicial proceedings. *Dillon v. Downes,* 401 F.Supp. 1240 (W.D.Va.1975). To obtain relief, petitioner must prove by a preponderance of the evidence that his constitutional rights were denied. *Post v. Boles,* 332 F.2d 738 (4th Cir. 1964), *cert. den.,* 380 U.S. 981, 85 S.Ct. 1346, 14 L.Ed.2d 274 (1965).

### A. *Conflict of Interest*

Petitioner Durham alleges that David G. Simpson, one of the attorneys who conducted his 1972 trial, labored under a loyalty to another person, which caused Simpson to compromise his representation of petitioner. Attorney Simpson had originally been appointed in 1964 to defend Otha Howard, who on the basis of petitioner's confession had been indicted along with petitioner for the Double Toll Gate slayings. The charges against Howard were nolle prossed, apparently because the Commonwealth's Attor-

ney became convinced that petitioner had lied in his confession when he named Howard as the killer. Simpson was subsequently appointed in 1965 to represent petitioner, and Simpson and Billie Joe Tisinger, appointed in 1972, represented petitioner at his retrial. Petitioner avers that Simpson's defense for Howard in 1964 had been that petitioner tried to frame him, and petitioner argues that it was improper for Simpson to later represent the very man he blamed for the murders in order to win Howard's release. Petitioner contends that Simpson was reluctant to present a vigorous defense at the 1972 trial, because if Simpson succeeded in exonerating petitioner, then the charges against Howard could be reinstated.

To substantiate his arguments, petitioner alleges that as a direct result of Simpson's conflict of interest, Simpson did not represent petitioner as zealously as he could have. Petitioner charges only Simpson with a conflict of interest, but he alleges that his defense counsel, which would include Tisinger, failed to (i) present an adequate opening statement, (ii) call witnesses on petitioner's behalf, (iii) develop inconsistencies in the state's evidence, (iv) object to the introduction of an incriminating statement, (v) instruct the jury on the petitioner's right not to testify, and (vi) show concern generally for petitioner. These are the main points that petitioner emphasizes in his brief with respect to the conflict of interest argument. Petitioner makes several other charges, and the court considers these several points below in discussing the ineffective assistance of counsel issue.

Arguing for the state, respondent contends that petitioner has failed to show the existence of a conflict of interest on the part of Simpson. In addition, respondent emphasizes that petitioner was represented by two attorneys, Simpson and Tisinger, and that petitioner has failed to allege or show that Tisinger was influenced by a conflict of interest. Therefore, respondent avers that petitioner was not denied the effective assistance of counsel.

The Sixth Amendment's guarantee of the right to counsel is a fundamental constitutional safeguard which is vital in protecting the criminal defendant's right to a fair trial. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The right to counsel was explicitly extended to state proceedings in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and this court acknowledges the essential role that the right to an effective lawyer plays in the criminal trial.

Yet the right to counsel is meaningless unless the attorney is free to devote himself to his client's best interest. In *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the Supreme Court held that effective assistance of counsel must not be impaired by a court order requiring one lawyer to simultaneously represent conflicting interests. The Court stated that the right to counsel is "too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Id.* at 76, 62 S.Ct. at 467. The Court in *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), recently reaffirmed the importance of the *Glasser* principles.

■ However, a single attorney's representation of codefendants is not *per se* unconstitutional, for in some cases multiple defendants can appropriately be represented by one attorney. *Holloway, supra,* 435 U.S. at 482, 98 S.Ct. 1173. In *Miller v. Cox,* 457 F.2d 700 (4th Cir. 1972), *cert. den.,* 409 U.S. 1007, 93 S.Ct. 433, 34 L.Ed.2d 299 (1972), the court sanctioned a lawyer's simultaneous representation of criminal codefendants, and in *United States v. Burkley,* 511 F.2d 47 (4th Cir. 1975), the court held that there was no conflict of interest where the office of the lawyer representing the defendant had prepared the affidavit that was later used to prosecute defendant. *See also* Annot., "Circumstances Giving Rise to Conflict of Interest Between or Among Criminal Codefendants Precluding Representation by Same Counsel," 34 A.L. R.3d 470 (1970).

Petitioner has the burden of proving by a preponderance of the evidence that his constitutional rights were abridged in the state court, *Post v. Boles, supra,* and in reviewing the state records and transcripts, this court cannot perceive the existence of a conflict of interest in Simpson's representation of petitioner. The cases that petitioner cites are distinguishable from the instant case, and this court holds that no conflict of interest existed and that petitioner's right to the effective assistance of counsel has not been denied.

*Sawyer v. Brough,* 358 F.2d 70 (4th Cir. 1966), is typical of the cases that petitioner cites for the established and well-accepted rule that it is improper for the court-appointed attorney to represent codefendants at their joint trial, when there is an obvious diversion of interest between the codefendants, who are placed in adversary and combative positions. *Sawyer* and the other cases petitioner cites are distinguishable from the case at bar, simply because petitioner's attorney Simpson did not represent Otha Howard and petitioner *simultaneously* at a *joint trial.* Simpson represented Howard more than seven years earlier, even before the first trial in 1965. The Commonwealth's Attorney nolle prossed the charges against Howard before the 1965 trial, and Howard was never tried at all, and certainly not as a codefendant with petitioner at a joint trial.

The rationale for *Sawyer* is that an attorney who represents codefendants with divergent interests at a joint trial is in an untenable position, because the attorney cannot adequately represent one codefendant without harming the other. Under the facts of the case at bar, however, there was no difficulty with Simpson representing petitioner. Howard's culpability was not even an issue at the trial, as the charges against him had been dismissed seven years earlier. Howard was not called at the trial to testify against petitioner, and no evidence of any kind was admitted at the trial where Howard tried to incriminate petitioner. Therefore, Simpson was not put in the position of having to attack Howard's credibility or character.

There was never any evidence introduced at petitioner's trial which tended to prove Howard's innocence but petitioner's guilt. In fact, the evidence the state presented showed that Howard committed the actual murders and that petitioner was an accomplice, and the case went to the jury with an instruction on felony murder. This jury instruction was approved by the Virginia Supreme Court in *Durham v. Commonwealth,* 214 Va. 166, 198 S.E.2d 603 (1973). Petitioner himself voluntarily gave the statement that the state relied on, and if the jury accepted that whole statement as true, including the part that said Howard was the actual slayer, the jury could still have lawfully convicted petitioner, even if Simpson could have proved conclusively that Howard did indeed commit the murders. In summary, none of the problems associated with simultaneous representation arose, because there was no joint trial where Simpson represented both Howard and petitioner.

The state records show that when Simpson was first appointed in 1965, the Commonwealth's Attorney pointed out the possibility of a conflict of interest. The court, after hearing Simpson's statement that there was no conflict, asked petitioner if he had any objections, and petitioner responded in the negative. At the 1972 trial, petitioner again stated to the court that he had no objection whatsoever to Simpson's representing him. When the court allowed petitioner to make a statement in court at the conclusion of the trial, petitioner made no reference to any improprieties engaged in by his lawyers, although he objected to other aspects of the trial. The court does not construe petitioner's actions to be a waiver of his right to loyal counsel, for the presumption against the waiver of fundamental rights is strong. *Glasser, supra.* However, the court considers it noteworthy that petitioner has waited so long to question the loyalty of an attorney first appointed in 1965, especially when the prosecutor in 1965 had highlighted the possibility of a conflict of interest.

█ Although the main thrust of petitioner Durham's argument deals with Simpson's allegedly divided loyalty between Howard and petitioner, petitioner complains because Simpson was a part-time Judge of the County Court when he represented petitioner. This claim lacks merit, because mere employment by the Commonwealth is not enough to establish a conflict of interest. There must be some connection relating to the investigation or prosecution of the case. *Kost v. Cox,* 317 F.Supp. 884 (W.D.Va.1970). In addition, petitioner knew that Simpson was County Judge, yet petitioner stated on the record that he had no objection to Simpson's representing him. It could well be that petitioner was happy to have a locally prominent lawyer representing him, especially a lawyer who was familiar with petitioner's case from having already tried it once in 1965.

█ Notwithstanding the charges petitioner has leveled against Simpson, this court holds unequivocally that petitioner's constitutional right to zealous and impartial defense counsel has not been diluted. The court notes that *two* attorneys, Simpson and Tisinger, represented petitioner at his 1972 trial. While petitioner alleges that Simpson was limited by a divided loyalty, petitioner has made no such allegation against Tisinger, nor has he alleged that Simpson influenced Tisinger. Furthermore, the court finds no evidence whatsoever in the record to indicate that there was a conflict of interest of any nature that would taint the assistance that Tisinger afforded petitioner.

The state court's addition of Tisinger as a second defense lawyer was not a mere formality, for this court has reviewed the transcript of the 1972 trial and has found that Tisinger played an active and substantial role in petitioner's defense. Tisinger (i) participated in the *voir dire* proceedings, (ii) cross-examined numerous witnesses at the trial, (iii) made pertinent objections throughout the trial, (iv) made motions and argued strenuously for petitioner, not only in open court, but in the judge's chambers as well, and (v) took part in the closing argument. In short, Tisinger constantly participated actively in the proceedings making many good points in petitioner's favor. After reviewing the active and vigorous advocacy of this second attorney, the court finds petitioner's allegation of ineffective assistance due to a conflict of interest to be totally devoid of merit.

█ To summarize, petitioner Durham has failed to demonstrate the existence of a conflict of interest. Although not stated expressly, the real thrust of petitioner's complaint appears to be that Simpson may have thought petitioner was guilty of the murders. This court notes that there has never been a constitutional right to an attorney who believes his client is innocent.

### B. *Ineffective Assistance of Counsel*

Petitioner Durham alleges that his counsel was ineffective at his 1972 trial, and petitioner cites numerous grounds for this conclusion. In his brief, petitioner states that his attorneys failed to (i) present an adequate opening statement, (ii) present witnesses on petitioner's behalf, (iii) develop inconsistencies in the Commonwealth's evidence, (iv) object to the admission of an incriminating statement, (v) instruct the jury on petitioner's right not to testify, and (vi) show concern generally for petitioner. Although his brief does not deal with the other points, petitioner further asserts that counsel (vii) failed to properly pursue a motion for a change of venue, (viii) allowed improper jurors to sit on the jury, and (ix) did not take steps to see that the jury took only the proper exhibits with them into the jury room.

Respondent contends that Simpson and Tisinger were properly competent and that matters of trial tactics are beyond this court's scope of review.

█ In determining whether a criminal defendant has been denied his constitutional right to the effective assistance of counsel, this court adheres to the competence standard announced in *Marzullo v. State,* 561 F.2d 540 (4th Cir. 1977). The *Marzullo* court, following *McMann v. Richardson,* 397

U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), used this measure: "Was the defense counsel's representation within the range of competence demanded of attorneys in criminal cases?" 561 F.2d at 543.

This court has reviewed the transcript of petitioner's trial, and the court holds that Simpson's and Tisinger's representation was well within the competence of counsel demanded in criminal cases. The effective assistance of counsel has not been denied simply because counsel failed to obtain an acquittal. *United States v. Robinson,* 502 F.2d 894 (7th Cir. 1974). Rather, the determination of whether counsel met the constitutional minimum requires a more detailed analysis. *See generally,* Annot., "Modern Status of Rule as to Test in Federal Court of Effective Representation by Counsel," 26 A.L.R. Fed. 218 (1976). A federal habeas corpus petitioner seeking relief on the grounds of court-appointed counsel's incompetence has the burden of proving a constitutional defect, *Day v. Peyton,* 303 F.Supp. 221 (W.D.Va.1969), and petitioner in the instant case has substantially failed to convince this court that Simpson and Tisinger were incompetent.

Petitioner challenges the adequacy of Simpson's opening statement, and respondent maintains that the opening statement is a matter of trial tactics. This court agrees with respondent. The matter of trial tactics and the attorney's judgments are beyond this court's review. *Tompa v. Commonwealth,* 331 F.2d 552 (4th Cir. 1964); *Franklin v. Conway,* 391 F.Supp. 1233 (W.D. Va.1975), *aff'd* 546 F.2d 579 (4th Cir. 1976).

Petitioner attacks his attorneys' failure to put on a defense in that no witnesses were called to testify on petitioner's behalf. However, based on a professional judgment, counsel's decision not to call witnesses does not deprive a defendant of his constitutional right to effective assistance. *Ingram v. Cox,* 339 F.Supp. 891 (W.D.Va. 1972). Since petitioner's voluntary confession placing him at the crime scene had been admitted into evidence, Simpson and Tisinger might have feared disastrous results in introducing witnesses who petitioner said would provide him with an alibi, especially where the alibi witnesses might be of questionable character and credibility. Furthermore, the evidence is not clear whether petitioner even wanted these witnesses at his trial. When petitioner made his oral statement to the sentencing court, he never mentioned the existence of witnesses who would prove his innocence, although petitioner was vocal on other points about his trial.

Petitioner states that his attorneys failed to develop inconsistencies in the Commonwealth's evidence, particularly in that the depth of the knife wounds on the murder victims was inconsistent with any knife that the state proved petitioner had possessed. However, a defense attorney who nitpicks at the state's evidence can easily do more harm than good, and this court finds that failure to develop these inconsistencies was a valid trial tactic beyond review. *See Tompa, supra; Franklin, supra.* In *Tolliver v. Slayton,* 331 F.Supp. 174 (W.D.Va.1971), the accused testified at his jury trial that he shot the victim in self-defense because he believed that the decedent had a knife. The court held that court-appointed counsel's failure to request production of the knife, when the jury knew of its existence and possible implications, was at most an error of judgment in trial tactics and was not enough to deprive the accused of a constitutional right.

Furthermore, the prosecutor did not need to prove that petitioner himself actually knifed the women, and the size of any knife used in the murders would be irrelevant to the defense. In a jury instruction, later approved by the Virginia Supreme Court in *Durham v. Commonwealth,* 214 Va. 166, 198 S.E.2d 603 (1973), the trial court instructed the jury that "if [you] believe from the evidence in this case beyond reasonable doubt that the defendant went to the home of the Hoovers with intent to commit robbery and in the course of said robbery or attempt to rob, Mrs. Snow was killed you shall find him guilty of murder in the first degree." This instruction states the famil-

iar felony murder rule, and since petitioner in his confession admitted breaking into the Hoover home with Howard, the jury could have found the evidence sufficient to convict petitioner of first degree murder, regardless of what knife was used or who wielded it.

■ Petitioner complains because his attorneys failed to object to the admission of the June, 1964, confession that he made to state investigators at the penitentiary. Failure to object to the proper admission of evidence does not entitle petitioner to habeas corpus relief, *Logan v. Cox,* 317 F.Supp. 61 (W.D.Va.1970), and the federal court that granted petitioner his 1972 retrial had held in a thorough opinion that petitioner's June, 1964, confession was voluntary and admissible. *See Durham v. Cox,* 328 F.Supp. 1157 (W.D.Va.1971). However, the attorneys did succeed in excluding two of petitioner's later statements, the July, 1964, statement made in the prosecutor's office after the reenactment and the March, 1965, statement made in jail. This latter statement could have been devastating, since petitioner therein changed his story to name George Easter instead of Otha Howard as the actual murderer.

■ Petitioner claims that his attorneys did not ask for a jury instruction commenting on petitioner's right not to testify. However, this is a matter of trial tactics, as an attorney may not want to call the jury's attention to a defendant's failure to testify. Trial tactics are beyond this court's review. *Tompa, supra; Franklin, supra.*

Petitioner next states that Simpson and Tisinger failed to generally show concern for petitioner. This court finds the claim to be devoid of merit. A lawyer is under no duty to fabricate defenses, but only has the task of investigation to determine whether valid defenses exist. *Jones v. Cunningham,* 313 F.2d 347 (4th Cir.) *cert. den.* 375 U.S. 832, 84 S.Ct. 42, 11 L.Ed.2d 63 (1963). A review of the 1972 trial transcript shows that Simpson and Tisinger should be commended for their energetic and intelligent efforts rather than chastised for indifference and incompetence. Petitioner's attor-

neys contested the state prosecutors at every turn, beginning with a motion for a change of venue and continuing up through the final appeal to the Virginia Supreme Court.

■ Petitioner argues that at the hearing on the motion for a change of venue, his attorneys failed to present all the evidence that was available on the pretrial publicity. Petitioner complains that an article in a national magazine was not offered into evidence to convince the Frederick County Circuit Court to grant a change of venue. It is uncontested, however, that the lawyers did introduce local newspaper stories and evidence from a local radio station concerning publicity on the murders. This court holds that an attorney's failure to present evidence which is merely cumulative does not deprive a criminal defendant of his right to effective assistance of counsel.

■ Petitioner contends that his attorneys allowed improper jurors to sit at his trial, in that several of the jurors were biased because they knew the deceased. However, a review of the *voir dire* examination exposes no shortcomings on the part of the attorneys' competence or vigor. Where there is no indication in the state court records that any juror who sat on the case was biased in such a way that would make it more difficult for him to return an impartial verdict, it is not error to hold a trial in and select jurors from the rural county where petitioner and the deceased were well known. *Wills v. Slayton,* 372 F.Supp. 776 (E.D.Va.1974). This is especially true where more than seven years had elapsed between the crime and the trial.

Petitioner argues that his attorneys did not insure that the jury took only the proper exhibits with them into the jury room. The court finds this allegation to be the merest speculation, and there is certainly no evidence in the record sufficient to grant petitioner habeas corpus relief.

### III. *Conclusion*

■ The constitutional standard for effective representation is not errorless repre-

sentation, and counsel's effectiveness is not measured by retrospectively considering whether his advice and judgment was right or wrong. To obtain habeas corpus relief, a state prisoner must show that any errors counsel made were so flagrant as to result from neglect or ignorance rather than from informed, professional deliberation. *Marzullo v. State,* 561 F.2d 540, 543–4 (4th Cir. 1977).

Having carefully reviewed the state court records of petitioner's 1972 trial, this court concludes that attorneys Simpson and Tisinger delivered vigorous and commendable representation on petitioner Durham's behalf. Petitioner has fallen far short of establishing that his right to the effective assistance of counsel was denied.

Therefore, petitioner Durham's motion for summary judgment is denied, and respondent Blankenship's motion to dismiss is granted. The case is hereby ordered dismissed and stricken from the docket.

The Clerk of this court is hereby directed to send certified copies of this Memorandum Opinion to petitioner, counsel for petitioner, and counsel for respondent.